UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2015 FEB 10 P 2: 09

US DISTRICT COURT
HARTFORD CT

---

MICHAEL W. DRENA,

                  Plaintiff,

-vs-

BANK OF AMERICA, N.A.,

                  Defendant

Civil Action No.:

3: 15cv 176  MPS

---

## COMPLAINT

The Plaintiff, Michael W. Drena, for his Complaint against the Defendant Bank of America, N.A., hereby alleges as follows:

### PARTIES

1.      The Plaintiff Michael W. Drena (hereinafter the "Plaintiff") is, and at all relevant times was, an individual with a principal place of residence in Bloomfield, Connecticut.

2.      The Defendant Bank of America, N.A. (hereafter "BOA" or "Defendant") is, and at all times complained of herein, was, a banking entity with a principal charter and place of business in Charlotte, North Carolina, licensed to conduct banking in the State of Connecticut.

### JURISDICTION AND VENUE

3.      The Court has jurisdiction to entertain this action under 28 U.S.C. §1332, because there is complete diversity of citizenship between the Plaintiff and Defendant and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

4.      The Court also has jurisdiction to entertain this action, as it asserts violation of federal law under 15 U.S.C. § 1681, *et seq.*

5.      The Court has jurisdiction over the state-law claims under the doctrine of Supplemental or Pendent Jurisdiction, pursuant to 28 U.S.C. § 1367.

6.     Venue is proper in the United States District Court for the District of Connecticut under 28 U.S.C. §1391(a) as this is the district in which the Plaintiff is domiciled and in which the acts giving rise to the claims occurred, and in which the real property at issue is located.

## MATERIAL FACTS COMMON TO ALL COUNTS

7.     At all times complained of herein, the Plaintiff owned real property located at 84 Duncaster Road, Bloomfield, Connecticut (the "Property").

8.     At all times complained of herein, the Plaintiff was a mortgagor of BOA, in that BOA held and serviced a mortgage on the Property.

9.     At all times complained of herein, the Plaintiff was self-employed.

10.    The Plaintiff suffered a substantial loss of income in 2009 as the result of a divorce and an historic economic recession. In view of the same, the Plaintiff called BOA to inquire about options that might be available to him, through BOA, to modify his mortgage or institute other foreclosure-preventive measures.

11.    In and around November, 2009, pursuant to the Plaintiff's inquiry, BOA, by its representative(s), solicited financial information from the Plaintiff over the telephone and mailed him a HAMP (federal modification program) application packet.

12.    The Plaintiff never completed the HAMP application packet in 2009, never submitted it to BOA for consideration and otherwise never requested to participate in HAMP or any other modification program at that time.

13.    In and around March, 2010, the Plaintiff learned that his bank account had several overdrafts. Upon examination, the Plaintiff determined that the overdrafts were caused by an increase in the amount of funds BOA was directly debiting from his bank account for his regular

2

mortgage payments. To wit: the regular mortgage payment debits then included an additional $630.00 per month.

14.  The Plaintiff had never authorized an increase in the direct debits attributable to his mortgage payments.

15.  In response to the Plaintiff's discovery of the aforesaid, he called BOA, was informed that he had been "approved" for participation in the HAMP program and was informed that the new mortgage debits were Trial Plan Payments.

16.  In further response to the unilateral, unauthorized actions of BOA, the Plaintiff then informed BOA that, since it was already considering him for modification, he did wish to be considered for permanent modification, as applicable. And so began an odyssey – a nearly four year debacle of beauracracy, misrepresentations, improprieties, unfair and deceptive acts and omissions and utterly oppressive conduct continually committed by the Defendant until the Plaintiff was finally able to get a measure of redress.

17.  For nearly two years, from 2010 through 2012, the Plaintiff submitted nearly eighteen modification applications and had nearly two hundred forty phone calls between himself and BOA in connection with his attempted modification efforts.

18.  During the aforesaid period, BOA created a nearly endless cycle of requesting an application, then updated documents, then more documents, then more updated documents, then another complete application, etc. etc. It became an "endless cycle" because BOA would unreasonably delay in reviewing information that it solicited from the Plaintiff and then by the time it did review the information, it would determine that some or all of the information was "outdated" and therefore more recent documentation would be needed.

3

19.      In and around September, 2012, BOA still had not reviewed the Plaintiff for a modification.

20.      In and around September, 2012, BOA initiated a foreclosure action against the Plaintiff and the Property.

21.      In response to the said foreclosure action, the Plaintiff was caused to hire an attorney.

22.      From approximately September, 2012 through January, 2014, the Plaintiff continued to attempt to have his loan properly reviewed by BOA.

23.      The Plaintiff participated in the state Judicial Foreclosure Mediation Program and submitted numerous additional complete loan modification application packages, documentation, financials, etc. in an effort to get his loan properly reviewed.

24.      During the aforesaid period, BOA made mathematical errors in computing his financial information and used incorrect or improper criteria for reviewing the Plaintiff's loan for modification options.

25.      BOA did not properly review the Plaintiff's loan for modification until September, 2013. The Plaintiff accepted a permanent loan modification in January, 2014.

26.      Throughout the years that BOA failed to adequately and properly review the Plaintiff's loan for modification options, including throughout 2013, interest, fees and costs continued to accrue on the loan.

27.      The excess interest, fees and costs accrued on the loan were excessive and unnecessary, in that, if BOA had properly reviewed the loan in 2010 it would modified the loan then. In turn, the Plaintiff would not have suffered the substantial increase in interest, fees and

4

costs he was ultimately caused to suffer.

28.     In addition to the substantial increase in the size of the loan, as aforesaid, as a result of BOA's actions in unilaterally increasing the Plaintiff's payments without authorization, the Plaintiff was unable to keep up his mortgage payments on an investment property he owned at 406-408 Park Road, West Hartford, Connecticut, resulting in his loss of that property through foreclosure.

29.     Despite the Plaintiff's efforts, BOA utterly failed and refused to provide the means to timely and properly work out the Plaintiff's delinquency. To wit:

a.      BOA is a signatory to the U.S. Department of Treasury Home Affordable Modification Program ("HAMP");

b.      HAMP guidelines direct that owners and servicers of subject loans, such as the Plaintiff's, owned and serviced by BOA, are to timely review homeowners' requests for mortgage assistance and accurately apply the program's provisions to delinquent loans;

c.      BOA maintains dedicated "loss mitigation" divisions and offers alternative loss mitigation options, such as non-HAMP modifications, forbearances, repayment plans and the like;

d.      The Plaintiff requested mortgage assistance, pursuant to HAMP and any other loss mitigation options available to them, starting in and around March, 2010;

e.      On dozens of occasions, from 2010 through September, 2013, BOA requested volumes of the same financial information from the Plaintiff, lost documents submitted, failed and refused to process documents submitted until they got "stale," failed to timely process documents submitted, failed to respond to requests for information, failed to

answer their own telephones and provided false and misleading information about loan status, documents needed and loss mitigation options;

        f.     On dozens of occasions from 2010 through September, 2013, BOA failed to abide by federal guidelines and their own guidelines in terms of offering mortgage relief to troubled borrowers and this Plaintiff and trying to prevent foreclosure.

30.     The Plaintiff's claims against BOA were not "ripe" until January, 2014, at which time BOA offered him a permanent loan modification. Once the Plaintiff accepted the said modification (in order to save his home), the final terms of the mortgage were then ascertainable and set.

31.     It was not until such time as the final (modified) terms of the loan had been set that the Plaintiff could determine his claims against the Defendant and his measure of damages.

32.     It was not until such time as the Plaintiff's loan was finally modified that BOA's continuing course of conduct and cycle of improper acts and omissions finally came to end. From the tender of the permanent loan modification, then, the Plaintiff was able to ascertain the true nature of his claims, the state of his economic loss and harm to his person.

**COUNT ONE (CUTPA)**

33.     Paragraphs 1-32 are re-alleged and incorporated herein as if fully set forth.

34.     This Count constitutes a claim pursuant to the Connecticut Unfair Trade Practices Act ("CUTPA"), Chapter 735a of the Connecticut General Statutes against the Defendant for violations of Conn. Gen. Stat. § 42-110a, *et seq.*, which prohibits unfair and deceptive acts or practices, for money damages, multiple damages, punitive damages, fees and costs of suit and other and further relief.

35.     By engaging in the aforementioned acts, misrepresentations and omissions, the Defendants made untrue and misleading representations to the Plaintiff that they were using best efforts to review the loan for a workout and that the Plaintiff was not at risk of losing his home.

36.     By engaging in the aforementioned acts, misrepresentations and omissions, the Defendants made untrue and misleading representations to the Plaintiff that their dedicated Loss Mitigation Departments, and loss mitigation representatives, would assist the Plaintiff with an attempted workout.

37.     The Defendant's acts, misrepresentations and omissions were likely to mislead the Plaintiff, who acted reasonably under the circumstances and reasonably in relation to the representations being made to him.

38.     The Defendant's acts, misrepresentations and omissions were material to the Plaintiff's decisions as to how best to attempt to work out the terms of the loan and/or explore other and further options for saving his home.

39.     The aforementioned acts, practices, misrepresentations and omissions by the Defendant are and were oppressive, unethical, immoral and unscrupulous and violate public policy against unconscionable business practices, including violations of the duties of good faith and fair dealing.

40.     The Defendant engaged in a continuous and cyclical course of conduct in the oppressive, unethical, immoral and unscrupulous acts, misrepresentations and omissions complained of herein, over a four year period.

41.     The Defendant's acts and practices, as described herein, constitute unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110a, *et seq.*

42. The Plaintiff was substantially harmed by the said Defendant's conduct, for which he claims relief pursuant to, *inter alia*, C.G.S. § 42-110a, *et seq.*, including, but not limited to, multiple damages, punitive damages and fees and costs of suit, including reasonable attorney's fees.

**COUNT TWO (Violation of Connecticut Creditor's Collection Practices Act)**

43. Paragraphs 1-32 are hereby re-alleged and incorporated herein as if fully set forth.

44. This Count constitutes a claim pursuant to the Connecticut Creditor's Collection Practices Act ("CCPA"), Chapter 669 of the Connecticut General Statutes, for relief against the Defendant for violations of Conn. Gen. Stat. § 36a-646,*et seq.*

45. At all times complained of herein, the Defendant was a creditor of the Plaintiff, attempting to collect a debt within the State of Connecticut.

46. The means used and acts, practices and misrepresentations made to the Plaintiff in connection with the Defendant's attempts to collect their debt were abusive, deceptive and misleading.

47. As a result of the aforementioned acts and misrepresentations by the Defendant, the Defendant violated the CCPA.

48. The Plaintiff was substantially injured as a result of the Defendant's violation of the CCPA, for which he claims relief, including, but not limited to, money damages and his fees and costs of suit.

**COUNT THREE (Misrepresentation)**

49. Paragraphs 1-32 are hereby re-alleged and incorporated herein as if fully set forth.

50. At all times complained of herein, and as stated above, the Defendant made

8

material misrepresentations to the Plaintiff, which misrepresentations were known or should have been known to the Defendant at the time they were made to be misrepresentations. To wit: the Defendant, by its agents and representatives, misrepresented to the Plaintiff that his loan would be timely and properly reviewed for foreclosure prevention options.

51.    The Plaintiff reasonably relied on the Defendant's misrepresentations, which reliance was reasonable under the circumstances.

52.    The Plaintiff was substantially harmed by the Defendant's material misrepresentations, for which he claims relief.

**COUNT FOUR (Negligent Misrepresentation)**

53.    Paragraphs 1-32 are hereby re-alleged and incorporated herein as if fully set forth.

54.    At all times complained of herein, and as stated above, the Defendant made material misrepresentations to the Plaintiff, which misrepresentations were made without regard to the truth of the matters asserted. To wit: the Defendant, by its agents and representatives, misrepresented to the Plaintiff that his loan would be timely and properly reviewed for foreclosure prevention options.

55.    The aforesaid misrepresentations were made negligently.

56.    The Plaintiff relied on the negligent misrepresentations by the Defendant, which reliance was reasonable under the circumstances.

57.    The Plaintiff was substantially harmed by the Defendant's negligent misrepresentations, for which he claims relief.

**COUNT FIVE (Breach of the Covenant of Good Faith and Fair Dealing)**

58.    Paragraphs 1-32 are hereby re-alleged and incorporated herein as if fully set forth.

59.     The Defendant, in purporting to offer the services of a "Loss Mitigation Department" to its borrowers, and in purporting to adequately review loans for workout options, undertook an obligation to act in good faith and deal fairly with their borrowers in matters involving loss mitigation, including workouts, loan modifications and foreclosure prevention.

60.     The said Defendant breached its covenant of good faith and fair dealing with the Plaintiff by engaging in the aforementioned acts, omissions and misrepresentations.

61.     The Plaintiff has been harmed by the Defendant's breach of the covenant of good faith and fair dealing, for which he claims relief.

**COUNT SIX (Negligent Infliction of Emotional Distress)**

62.     Paragraphs 1-32 are hereby re-alleged and incorporated herein as if fully set forth.

63.     At all times complained of herein, and in accordance with the facts stated herein, the Defendant engaged in conduct that it should have realized involved an unreasonable risk of causing emotional distress for the Plaintiff, and that the said distress would likely result in illness.

64.     The Defendant's said actions and conduct did in fact cause the Plaintiff to suffer severe emotional distress.

65.     The Plaintiff's severe emotional distress has resulted in physical illness and bodily injury.

66.     The Plaintiff claims relief due to the Defendant's said negligent infliction of emotional distress.

**COUNT SEVEN (Violation of the Fair Credit Reporting Act pursuant to 15 U.S.C. § 1681)**

67.     Paragraphs 1-32 are hereby re-alleged and incorporated herein as if fully set forth.

68.     At all times material hereto, the Defendant qualified as, and acted as, a provider of information to Credit Reporting Agencies duly licensed with and regulated by the United States of America, including but not limited to Experian, Equifax, and TransUnion, under the Federal Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*

69.     The Defendant, through and with its agents, representatives, successors or assigns, wrongfully, improperly, and illegally reported negative information as to the Plaintiff to one or more Credit Reporting Agencies, resulting in the Plaintiff having negative information on his credit reports and the lowering of his FICO score(s). To wit: in accordance with the facts stated herein, the Defendant's own improper acts and omissions caused the Plaintiff's loan to be delinquent and to remain so for a much longer period of time than in should have been. In turn, reports on the Plaintiff's credit status were grossly inflated, improper and improperly reported.

70.     Pursuant to 15 U.S.C. § 1681(s)(2)(b), the Plaintiff is entitled to maintain a private cause of action against the Defendant for an award of damages in an amount to be proven at the time of trial for all violations of the Fair Credit Reporting Act which caused actual damages to him, including money damages, emotional distress and humiliation.

71.     The Plaintiff is also entitled to recover damages from the Defendant for its negligent non-compliance with the Fair Credit Reporting Act,  pursuant to 15 U.S.C. § 1681(o).

72.     The Plaintiff is further entitled to an award of punitive damages against the Defendant and its agents, for its and their willful noncompliance with the Fair Credit Reporting Act, pursuant to 15 U.S.C. § 1681(n)(a)(2) in an amount to be proven at time of trial.

**WHEREFORE**, the Plaintiff Michael W. Drena prays for the following relief:

1.  <u>As to Count One</u>:
    Money Damages;
    Multiple Damages pursuant to C.G.S. § 42-110a;
    Punitive Damages pursuant to C.G.S. § 42-110a; and
    The Plaintiff's fees, costs of suit and reasonable attorney's fees pursuant to C.G.S. § 42-110a.

2.  <u>As to Count Two</u>:
    Money Damages; and
    Fees and costs of suit pursuant to Conn. Gen. Stat. § 36a-646,*et seq.*

3.  <u>As to Counts Three through Six, inclusive</u>:
    Money Damages.

4.  <u>As to Count Seven</u>:
    Money Damages;
    Multiple Damages pursuant to 15 U.S.C. § 1681, *et seq.*;
    Punitive Damages pursuant to 15 U.S.C. § 1681, *et seq.*;

5.  Such other and further legal and equitable relief as the Court shall deem just and proper.

    The Plaintiff requests a Jury Trial .

    Dated at Bloomfield, Connecticut this    day of February, 2015.


                    THE PLAINTIFF
                    MICHAEL W. DRENA


                    _____  2/10/15
                    84 Duncaster Road
                    Bloomfield, CT 06002-1506
                    (P)(860) 263-8547

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is the plaintiff in the above action, that he has read the above complaint and that the information contained in the complaint is true and correct. 28 U.S.C. § 1746; 18 U.S.C. § 1621. Executed at _____ on _____, 2015.


_____

Michael W. Drena

13