UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICHAEL W. DRENA,
    Plaintiff,

v.

BANK OF AMERICA, N.A.,
    Defendant.

No. 3:15-cv-00176 (MPS)

## RULING AND ORDER

The *pro se* plaintiff Michael W. Drena brings seven counts against Bank of America, N.A. that relate to a mortgage on the plaintiff's property. In Count I, he invokes the Connecticut Unfair Trade Practices Act. In Count II, he claims that the defendants violated the Connecticut Creditor's Collection Practices Act. He alleges that the defendants made an innocent or fraudulent misrepresentation in Count III and a negligent misrepresentation in Count IV. In Count V, he claims that the defendants breached the covenant of good faith and fair dealing. He says that the defendant negligently inflicted emotional distress in Count VI. Finally, Count VII is brought under the Fair Credit Reporting Act, specifically 15 U.S.C. § 1681s-2(b), which concerns the responsibilities of persons who provide information to credit reporting agencies. The defendant has moved to dismiss the Complaint in its entirety. For the reasons discussed below, I deny the motion to dismiss as to Count I, II, III, IV, and VI, and grant the motion to dismiss as to Counts V and VII.

**I.**     **Factual Allegations**

Construed liberally and in the light most favorable to the plaintiff, *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007), the Complaint pleads the following facts. Bank of America held a mortgage on the plaintiff's property. (ECF No. 1 at ¶ 8.) In 2009, after the plaintiff's income

decreased because of a divorce and the economic recession, the plaintiff spoke with Bank of America to learn about options for modifying his mortgage and to prevent foreclosure. (*Id.* at ¶ 10.) The plaintiff did not apply for a mortgage modification program at that time. (*Id.* at ¶ 12.) Nevertheless, Bank of America began to take from the plaintiff's bank account an additional $630 per month on top of the plaintiff's previous mortgage payment without the plaintiff's authorization. (*Id.* at ¶¶ 12–14.) The plaintiff discovered this when he learned of overdrafts on his bank account caused by the unauthorized deductions by Bank of America. (*Id.* at ¶¶ 13–14.) The plaintiff called the defendant and was told that the higher payments were because the bank approved his participation in a mortgage modification program. (*Id.* at ¶ 15.) The plaintiff then informed the defendant that, because it was already considering him for a loan modification, "he did wish to be considered for permanent modification." (*Id.* at ¶ 16.) Thereafter, the plaintiff spent several years repeatedly providing Bank of America with the information that it requested in connection with the loan modification, but Bank of America would repeatedly delay reviewing the information until it was already out of date and had to be resubmitted. (*Id.* at ¶¶ 16–19.) Then, in 2012, Bank of America brought a foreclosure action against the plaintiff. (*Id.* at ¶ 20.)

The plaintiff hired an attorney and continued to try to modify his loan, but Bank of America did not "properly review" the plaintiff's loan modification application until 2013. (*Id.* at ¶¶ 21–26.) Bank of America's errors in computing his financial information and use of "incorrect or improper criteria" to review his loans for "modification options," caused the plaintiff to incur costs and fees, including a substantial increase in his interest rate. (*Id.* at ¶¶ 24, 27.) The increased payments on this mortgage prevented the plaintiff from making his mortgage payments on a separate property, which he ultimately lost through foreclosure. (*Id.* at ¶ 28.) Bank of America gave negative information about the plaintiff to one or more Credit Reporting Agencies,

which harmed the plaintiff's FICO score and caused his credit reports to show negative information. (*Id.* at ¶ 69.)

## II. Standard of Review

In evaluating whether a plaintiff has stated a claim for relief, I must "accept as true all factual allegations in the complaint and draw all reasonable inferences" in the plaintiff's favor. *Cruz v. Gomez*, 202 F.3d 593, 596 (2d Cir. 2000). Courts will not accept conclusory allegations and may only allow the case to proceed if the complaint pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (citing *Twombly*, 550 U.S. at 554–55). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). When a plaintiff submits a complaint *pro se*, the reviewing court shall construe the allegations liberally, raising "the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Even a *pro se* plaintiff, however, must meet the standard of facial plausibility set forth above. *See Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) ("[A] *pro se* complaint must state a plausible claim for relief.") (citing *Harris v. Mills*, 572, F.3d 66, 73 (2d Cir. 2009)).

## III. Discussion

### A. Count I: Connecticut Unfair Trade Practices Act

To state a CUTPA claim, a plaintiff must allege that "(1) the defendant engaged in unfair or deceptive acts or practices in the conduct of any trade or commerce; and (2) [he or she] has suffered an ascertainable loss of money or property as a result of the defendant's acts or

3

practices." *See Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.,* 287 Conn. 208, 217–18 (2008) (citations omitted) (applying CUTPA in the context of an appeal from class certification).

        *1.       Whether the plaintiff has alleged an unfair or deceptive act or practice.*

Whether an act or practice is unfair or deceptive is determined by the "cigarette rule," which asks:

> (1) [w]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise-whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers competitors or other businessmen.

*Jacobs v. Healey Ford-Subaru, Inc.*, 231 Conn. 707, 725 (1995) (citing *Conaway v. Prestia*, 191 Conn. 484, 492–93 (1983)). A party need not allege facts about each of these factors; a CUTPA violation, which depends on "all the circumstances of the particular case," can be pleaded by alleging either an actual deceptive practice, or a practice that violates public policy. *Id.* at 725–26.

The defendant argues that the plaintiff's claim is limited to the defendant's failure promptly to modify his loan and that, even if the claim extends beyond the delayed loan modification, the plaintiff's allegations do not satisfy the cigarette rule. (ECF No. 7-1 at 3–5.) The plaintiff's allegations encompass more than Bank of America's delay in modifying his loan; they also include, for example, the allegation that Bank of America unilaterally began to debit $630 a month from the plaintiff's bank account in addition to his previous mortgage payment, even though the plaintiff had not authorized the additional payment and had not yet applied for a loan modification. (ECF No. 1 at ¶¶ 12–14.) The plaintiff found out about the additional debits because they caused his bank account to have several overdrafts. (*Id.* at ¶ 13.) When the plaintiff asked Bank of America about the unauthorized debits, Bank of America told him that it had

4

approved him to participate in the Home Affordable Modification Program and that the extra debits were trial payments. (*Id.* at ¶ 15.) Bank of American then took several more years actually to approve the plaintiff for a loan modification. (*Id.* at ¶ 25.)

The defendant does not directly address these allegations. The defendant refers to T*D Bank, N.A. v. M.J. Holdings, LLC*, No. CV106003386, 2011 WL 1030160 (Conn. Super. Ct. Feb. 17, 2011), *aff'd in part, rev'd in part and remanded*, 143 Conn. App. 322 (2013), for the proposition that refusing to negotiate a loan modification does not violate CUTPA. (ECF No. 19 at 1.) Even if the Connecticut Superior Court's decision is applicable here, the plaintiff's allegation that Bank of America debited over $600 a month from the plaintiff's bank account without permission, warning, or authority, only later to tell the plaintiff that the debits were made because he had been approved for a program to which he did not apply (and would not actually be approved for several years) is sufficient to satisfy the cigarette rule. Specifically, the plaintiff alleges that the defendant acted unfairly by taking funds from his account without authorization. *See Jacobs*, 231 Conn. at 725 ("[W]hether the practice . . . offends public policy as it has been established by statutes, the common law, or otherwise [i.e.,] it is within at least the penumbra of some . . . established concept of unfairness"); (ECF No. 1 at ¶ 39). The plaintiff also alleges that the acts were unethical, immoral, and unscrupulous. *See Jacobs*, 231 Conn. at 725 ("whether it is immoral, unethical, oppressive, or unscrupulous"); (ECF No. 1 at ¶ 39). Taking money from another person's bank account without permission or legal authority is unethical and unscrupulous. Finally, removing hundreds of dollars from an individual's account without warning would cause substantial injury to consumers because it could—and in this case allegedly did—prevent consumers from meeting their financial obligations. *See Jacobs*, 231 Conn. at 725 ("whether it causes substantial injury to consumers"); (ECF No. 1 at ¶¶ 13, 28).

> 2. *Whether the plaintiff has alleged that he has suffered a loss as a result of the defendant's acts.*

As discussed above, the plaintiff has alleged that the defendant engaged in an unfair trade practice. The next issue is whether the plaintiff has alleged that the defendant's acts were the proximate cause of an ascertainable loss. *Artie's Auto Body, Inc.,* 287 Conn. at 217–18. The defendant argues that the plaintiff has not alleged causation, especially because the plaintiff does not show how the defendant's conduct—as opposed to the plaintiff's own economic situation—harmed the plaintiff. (ECF No. 7-1 at 5.) Here, the plaintiff alleges that Bank of America's actions, including the increased loan payment, prevented the plaintiff from being able to pay a mortgage on a separate property, which he lost through foreclosure. (ECF No. 28 at ¶ 28.) The plaintiff has plausibly alleged that Bank of America's action to remove over $600 a month from the plaintiff's bank account caused him to be unable to make other mortgage payments, regardless of whether the plaintiff suffered a loss of income a year earlier. (ECF No. 1 at ¶¶ 10, 13–14.) Therefore, I deny the defendant's motion to dismiss Count I.

### B.     Count II: Connecticut Creditor's Collection Practices Act

A person harmed by a "creditor [who uses] any abusive, harassing, fraudulent, deceptive or misleading representation, device or practice to collect or attempt to collect any debt" has a private right of action against the creditor for damages. Conn. Gen. Stat. §§ 36a-646, 36a-648. A creditor includes "any person to whom a debt is owed by a consumer debtor and such debt results from a transaction occurring in the ordinary course of such person's business . . . ." Conn. Gen. Stat. § 36a-645(2). Here, the first issue is whether the plaintiff has alleged that the defendant acted "to collect or attempt to collect." Conn. Gen. Stat. § 36a-646.

The defendant argues that the plaintiff has not alleged that it "collected or attempted to collect a debt," but that it was attempting to "modify" a debt. (ECF No 7-1 at 5–6.) A creditor

who takes money without authorization from a debtor to pay a debt is plainly collecting a debt or attempting to do so. The defendant would call its actions "loss mitigation efforts," (ECF No. 7-1 at 6), but the plaintiff has alleged that the defendant made unauthorized debits from the plaintiff's account *to pay his mortgage debt*.

The next issue is whether the defendant's actions were "abusive, harassing, fraudulent, deceptive or misleading." Conn. Gen. Stat. §§ 36a-646, 36a-648. The plaintiff alleges that Bank of America, a creditor, made substantial unauthorized debits, told the plaintiff that the debits were because he was under consideration for a loan modification program, and then delayed considering the plaintiff for participation in the program for several years. It is deceptive and misleading for a mortgagee to make unauthorized debits from a mortgagor and—when confronted by the mortgagor—to tell the mortgagor that the increased and unauthorized payments are because the mortgagor is being considered for a loan modification program (which would presumably help the mortgagor remain on the property) only to delay actually modifying the loan for several years. Therefore, I deny the motion to dismiss as to Count II.

### C. Counts III: "Misrepresentation"

It is unclear what type of misrepresentation claim the plaintiff seeks to allege in Count III. For example, the plaintiff may be attempting to state a claim for fraudulent misrepresentation because he states that the defendant's misrepresentations were "known or should have been known" to the defendants to be false. (ECF No. 1 at ¶ 50.) To state a claim for fraudulent misrepresentation, a plaintiff must allege that "(1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury." *Sturm v. Harb Development, LLC*, 298 Conn. 124, 142 (2010)

7

(quoting *Suffield Development Assocs. v. Nat'l Loan Investors, L.P.*, 260 Conn. 766, 777–78 (2002)). There are no specific allegations to make it plausible that the defendant made a fraudulent misrepresentation "that is knowingly untrue, or made without belief in its truth, or recklessly made and for the purpose of inducing action upon it." *Id.* (quoting *Kramer v. Petisi*, 285 Conn. 674, 684 n.9 (2008)). Therefore, the plaintiff has failed to state a claim for fraudulent misrepresentation. Further, fraud claims must be "state[d] with particularity," Fed. R. Civ. P. 9(b), and the Complaint includes no specification of the requisite "who, what, when, where and how of the alleged fraud." *Lipow v. Net1 UEPS Techs., Inc.*, No. 13 CIV. 9100 ER, 2015 WL 5459730, at *8 (S.D.N.Y. Sept. 16, 2015).

Construing Count III liberally, as I must with a *pro se* plaintiff, *Abbas*, 480 F.3d at 639, the plaintiff may also be attempting to plead a claim for innocent misrepresentation. The elements of innocent misrepresentation are: "(1) a representation of material fact (2) made for the purpose of inducing [the plaintiff to act], (3) the representation is untrue, and (4) there is justifiable reliance by the plaintiff on the representation by the defendant and (5) damages." *Frimberger v. Anzellotti*, 25 Conn. App. 401, 410 (1991).[1]

The defendant argues that the plaintiff has not alleged a representation of material fact. (ECF No. 7-1 at 6.) However, the plaintiff alleged that Bank of America misrepresented to him that "his loan would be timely and properly reviewed for foreclosure prevention options." (ECF No. 1 at ¶ 50.) The defendant argues that there is no allegation that it knew its representation was untrue. (ECF No. 7-1 at 6–7.) But to plead an innocent misrepresentation, the plaintiff need not allege that the defendant knew the statement to be untrue. *Frimberger*, 25 Conn. App. at 410. *See*

---

[1] The defendant lists the elements of *innocent* misrepresentation as provided by *Frimberger v. Anzellotti*, 25 Conn. App. 401, 410 (1991) but then incongruously suggests that the plaintiff has not pled fraud with the particularity required by Federal Rule of Civil Procedure 9(b). (ECF No. 7-1 at 6.)

8

*also Kramer*, 285 Conn. at 686 n.10 (The "distinct tort of innocent misrepresentation . . . in contrast to the tort of negligent misrepresentation, is predicated on principles of warranty.").

Next, the defendant argues that the plaintiff's reliance was not justified because "the decision to stop paying his Mortgage was his and his alone." (ECF No. 7-1 at 7.) It does not follow from a mortgagor's ceasing to make payments on his loan that he is not justified in relying on a mortgagee's representation that it will promptly take steps to avoid foreclosure, the very reason a loan modification was necessary in the first place.

Finally, the defendant argues that the plaintiff has inadequately alleged damages because the defendant has submitted a Loan Modification Agreement that purports to show that the plaintiff's principal balance was reduced significantly in a 2014 loan modification. (ECF No. 7-1 at 7.) Regardless of the Loan Modification Agreement, the plaintiff has adequately alleged damages because he alleges that the defendant's misrepresentation and subsequent delay caused the plaintiff to hire an attorney to represent him in a foreclosure action, and to incur interest, fees, and other costs. Thus, viewing the allegations in the light most favorable to the plaintiff, *Cruz*, 202 F.3d at 596, I construe Count III to state a plausible claim for innocent misrepresentation.

### D.     Count IV: Negligent Misrepresentation

The elements of a claim for negligent misrepresentation are: "(1) that a misrepresentation of fact was made; (2) that the party making it knew or should have known that it was untrue; (3) that the other party reasonably relied upon it; and (4) that the latter suffered pecuniary harm as a result thereof." *United Rentals, Inc. v. Wagner*, No. 3:07-CV-00519AWT, 2008 WL 2167021, at *3 (D. Conn. May 22, 2008) (citing *Glazer v. Dress Barn, Inc.*, 274 Conn. 33, 73, (2005)).

Here, the plaintiff alleges that the defendant misrepresented that his loan would be "timely and properly reviewed for foreclosure prevention options." (ECF No. 1 at ¶ 54.) He

alleges that the misrepresentation was made without regard to its truth or falsity; this allegation is supported by the claim that Bank of America used improper loan-modification criteria, made mathematical errors in assessing the plaintiff's financial status, and unreasonably delayed in processing the plaintiff's information. (*Id.* at ¶¶ 18, 24–25, 54.) He further alleges that he reasonably relied on the misrepresentation (*Id.* at ¶ 56), presumably by applying for a modification (*Id.* at ¶ 17). This, he claims, was to his detriment because the defendant delayed a timely and proper review of his foreclosure prevention options, causing the plaintiff to incur the costs of an attorney to represent him in a foreclosure action, as well as unnecessary interest, fees, and other costs related to his loan. (*Id.* at ¶¶ 21, 26–27.) Therefore, I deny the motion to dismiss as to Count IV.

> E. **Count V: Breach of the Covenant of Good Faith and Fair Dealing**

The elements of a breach of the covenant of good faith and fair dealing under Connecticut law are: (1) "that the plaintiff and the defendant were parties to a contract under which the plaintiff reasonably expected to receive certain benefits;" (2) "that the defendant engaged in conduct that injured the plaintiff's right to receive some or all of those benefits;" and (3) "that when committing the acts by which it injured the plaintiff's right to receive benefits he reasonably expected to receive under the contract, the defendant was acting in bad faith." *Bagley v. Yale Univ.*, 42 F. Supp. 3d 332, 359–60 (D. Conn. 2014) (quoting *Franco v. Yale Univ.*, 238 F. Supp. 2d 449, 455 (D. Conn. 2002)). *See also De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 433 (2004) ("To constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith.").

The plaintiff alleges that Bank of America undertook, and subsequently breached, an obligation to act in good faith and to deal fairly with the plaintiff because it purported "to offer the services of a 'Loss Mitigation Department.'" (ECF No. 1 at ¶ 59.) The plaintiff does not allege, however, that the Note, Mortgage, or some other implied contract, created a reasonable expectation in the plaintiff that he would be entitled to the services of a "Loss Mitigation Department." In addition, even if there were such a reasonable expectation under a contract, the plaintiff's claim fails because he does not allege that Bank of America acted in bad faith when it allegedly delayed the plaintiff's loan modification application. *De La Concha of Hartford*, 269 Conn. at 433 ("Bad faith means more than mere negligence; it involves a dishonest purpose."). Therefore, Count V is dismissed.

### F.       Count VI: Negligent Infliction of Emotional Distress

The elements of a claim for negligent infliction of emotional distress are "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444 (2003). "In negligent infliction of emotional distress claims, unlike general negligence claims, the foreseeability of the precise 'nature of the harm to be anticipated [is] a prerequisite to recovery even where a breach of duty might otherwise be found.'" *Perodeau v. City of Hartford*, 259 Conn. 729, 754 (2002) (quoting *Maloney v. Conroy*, 208 Conn. 392, 398 (1988) *overruled by implication on other grounds as recognized by Squeo v. Norwalk Hosp. Ass'n*, 316 Conn. 558, 570 (2015)). Thus, emotional distress likely to result in illness or bodily harm suffered by the plaintiff must be a foreseeable consequence of the defendant's conduct. *Id.* at 755. The test requires that the plaintiff's distress

be reasonable in light of the defendant's conduct. *Carrol*, 262 Conn. at 447. If the plaintiff's distress is reasonable, then it is foreseeable; if it is unreasonable, then it is not foreseeable. *Id.*

The defendant cites a Connecticut Superior Court case for the proposition that "allegations of emotional distress flowing from a breach of contract, without more, fall short of setting forth a viable cause of action for negligent infliction of emotional distress." (ECF No. 7-1 at 10 (citing *Topolski v. Bank of Am.*, No. TTDCV135005789, 2014 WL 2853906, at *3 (Conn. Super. Ct. May 16, 2014).) There is some support for this conclusion. For example, the Appellate Court of Connecticut held that cancelling a contract for a wedding venue can give rise to a bride's claim for negligent infliction of emotional distress, in part because of the unique importance of a wedding in one's life and the extensive preparation that weddings require. *Murphy v. Lord Thompson Manor, Inc.*, 105 Conn. App. 546, 554–56 (2008). Similarly, the Supreme Court of Connecticut held that there was adequate evidence to support a homeowner's claim for negligent infliction of emotional distress arising out of a breach of the homeowner's insurance policy, where the insurer conducted a "shoddy" investigation "possibly . . . influenced by racial stereotypes" that erroneously accused the plaintiff of committing arson. *Carrol*, 262 Conn. at 434–38, 445–48.

Courts in this district have held that a claim for negligent infliction of emotional distress can arise in relation to the service of a mortgage. In *Holtman v. Citifinancial Mortgage Co.,* the court denied a motion to dismiss a claim of negligent infliction of emotional distress when a mortgagee erroneously assessed late charges, contacted a third party about allegedly untimely payments, made hundreds of telephone calls at the mortgagors' home and office, claimed that "an attorney would come out on Monday and put a padlock on the door" if the mortgagors did not make a payment that was not actually due, refused to determine the validity of its late-

payment claims, and repeatedly threatened to notify credit reporting agencies that the mortgagors were in default when the mortgagee knew or should have known that there was no default. *Holtman v. Citifinancial Mortg. Co., Inc.*, No. 3:05-CV-1571, 2006 WL 1699589, at *1, *6 (D. Conn. Jun. 19, 2006) (applying the pre-*Iqbal* standard as articulated by *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).

Here, the plaintiff alleges that Bank of America improperly debited payments from his bank account, represented to him that it would promptly work with him to avoid foreclosure but instead delayed a loan modification application, did not process the documents that it repeatedly requested, and initiated a foreclosure action. (ECF No. 1 at ¶¶ 14, 18, 20, 29, 50.) That is sufficient to state a claim for negligent infliction of emotional distress because it is foreseeable that taking unauthorized funds from a mortgagor who already is struggling to pay his mortgage, and then stringing along the mortgagor for years by repeatedly requesting and repeatedly ignoring the mortgagor's loan-modification paperwork would be severely distressing to a mortgagor in financial straits striving to stay in his home. *See Holtman*, 2006 WL 1699589, at *6 (denying a motion to dismiss in similar circumstances).

Therefore, I deny the motion to dismiss as to Count VI.

### G.   Count VII: Fair Credit Reporting Act

The plaintiff brings a claim under the Fair Credit Reporting Act. "After receiving notice . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency" the person generally must investigate and correct errors in the information that it provided to the consumer reporting agency. 15 U.S.C. § 1681s-2(b)(1). A plaintiff has a private right of action if a person intentionally or negligently does not comply with its duties under 15 U.S.C. § 1681s-2(b). 15 U.S.C. §§ 1681n, 1681o, 1681s-2(b)–

(d); *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 445 n.6 (2d Cir. 2015) ("[T]he FCRA does allow for private civil causes of action against furnishers . . . when a furnisher willfully or negligently fails to correct a credit reporting error after receiving notice of a dispute from a consumer reporting agency.").

The defendant argues that Count VII fails as a matter of law because the plaintiff does not allege that Bank of America received notice of a claimed inaccuracy from a credit reporting agency. *See* 15 U.S.C. § 1681s-2(b)(1) ("[A]fter receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall . . . ."). The plaintiff does not allege that the defendant received notice of a dispute as required by 15 U.S.C. § 1681s-2(b)(1), or even that the plaintiff disputed the accuracy of the information that the defendant provided. For these reasons, the plaintiff has failed to state a claim under 15 U.S.C. § 1681s-2(b).

Instead, the plaintiff's allegations in Count VII and his arguments in his brief focus on the requirements of 15 U.S.C. § 1681s-2(a), which imposes obligations on persons when they provide information to a credit reporting agency. (*See* ECF No. 1 at ¶ 69 ("The Defendant . . . reported negative information as to the Plaintiff to one or more Credit Reporting Agencies . . . .").) There is no private right of action to enforce the requirements of 15 U.S.C. § 1681s-2(a). 15 U.S.C. § 1681s-2(c). I, therefore, dismiss Count VII.

**IV.     Conclusion**

For the reasons discussed above, I DENY the motion to dismiss as to Counts I, II, III, IV, and VI and GRANT the motion to dismiss as to Counts V and VII.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:     Hartford, Connecticut
           February 23, 2016