IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL W. DRENA, )<br>)<br>     Plaintiff, )<br>)<br>v. )<br>)<br>BANK OF AMERICA, N.A., )<br>)<br>     Defendant. )<br>)<br>) | C.A. 3:15-cv-00176-MPS |

**DEFENDANT BANK OF AMERICA, N.A.'s REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Bank of America, N.A. ("BANA") respectfully submits this brief in reply to Plaintiff Michael W. Drena ("Plaintiff") March 7, 2017 Opposition to Defendant's Motion for Summary Judgment (the "Opposition" or "Opp.," Doc. 40), and in further support of BANA's December 19, 2016 Motion for Summary Judgment (Doc. 39), Memorandum of Law (Doc. 39-1), and Statement of Undisputed Material Facts (Doc. 39-35) (collectively "BANA's Motion"). BANA's Motion, filed pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeks summary judgment on Plaintiff's remaining claims for violation of the Connecticut Unfair Trade Practices Act ("CUTPA"); violation of the Connecticut Creditor's Collection Practices Act ("CCPA"); innocent misrepresentation;[1] negligent misrepresentation; and negligent infliction of emotional distress, as alleged in Plaintiff's Complaint (Doc. 1).

---

[1] In the February 23, 2016 Order (Doc. 30), the Court held that Plaintiff did not plead a claim for intentional misrepresentation in Count III but did plead a liberally-construed claim for innocent misrepresentation.  Doc. 30 at 8.

## I. SUMMARY OF THE REPLY

Plaintiff's belated and untimely Opposition fails to establish the existence of a genuine issue of material fact precluding summary judgment in favor of BANA on all claims. Although Plaintiff attempts to interject "additional facts" as part of the Opposition, his purported additional facts are objectionable and inadmissible under the Federal Rules of Evidence, should not be considered by this Court, and would not create a genuine issue of material fact even if considered. Furthermore, Plaintiff's concession that he had knowledge of the imposition of escrow is fatal to his escrow-based claims, and his new theories of liability are unsupported by the allegations in the Complaint. As to Plaintiff's loss mitigation review-based claims, each fails as a matter of law and undisputed fact, and Plaintiff fails to cite any legal authority in support of his claims. Thus, the Court should grant BANA's Motion and enter summary judgment in favor of BANA and against Plaintiff on all remaining claims.

## II. THE OPPOSITION IS UNTIMELY AND SHOULD BE STRICKEN.

The Court should strike and/or disregard Plaintiff's Opposition in its entirety because it is untimely filed under the Federal Rules of Civil Procedure and this Court's Local Rules.[2] BANA's Motion was filed and served on December 19, 2016, which established January 9, 2017 as Plaintiff's deadline to respond under the Federal Rules of Civil Procedure and L.R. Civ. P. 56(b). On January 9, 2017, Plaintiff informally requested a short extension of Plaintiff's deadline until January 20, 2017, to which BANA consented. Plaintiff did not request any further extensions. Approximately 10 weeks after the agreed-upon deadline of January 20, 2017, Plaintiff proceeded to file the Opposition on March 7, 2017. Because of the untimeliness of the

---

[2] Local Rule of Civil Procedure 56(b) states: "You must file your opposition papers with the Clerk of the Court and mail a copy to the defendant's counsel within 21 days of the filing of the defendant's motion with the Clerk of the Court. This 21-day period is extended an additional three days if any of the conditions of Rule 6(e) of the Federal Rules of Civil Procedure are met (for example, if you received the defendant's motion by mail or overnight delivery service)."

Opposition, the Court should not consider it in ruling on BANA's Motion. However, to the extent the Court chooses to consider the Opposition, the Court should still grant BANA's Motion because Plaintiff in the Opposition fails to establish the existence of a genuine issue of material fact precluding summary judgment in BANA's favor for the reasons discussed more fully below.

## III.    BANA'S OBJECTIONS TO PLAINTIFF'S SUMMARY JUDGMENT EVIDENCE

In support of the Opposition, Plaintiff attaches an improper and self-serving statement entitled "Affidavit of Michael W. Drena" (the "Drena Affidavit," Doc. 40-2) which does not comply with the Federal Rules of Evidence, does not constitute admissible evidence of anything, and should be stricken from the record. First and foremost, the Drena Affidavit is not an affidavit at all because it was not properly notarized by a notary public. The Drena Affidavit is also not admissible as an unsworn declaration submitted under U.S.C.A. § 1746 because the statements made in the Drena Affidavit were not made under the penalty of perjury.

But even if the Drena Affidavit were deemed to be a properly submitted affidavit or declaration, the Drena Affidavit still does not constitute competent summary judgment because it violates numerous rules of evidence and is inadmissible as hearsay under Rules 801 and 802 of the Federal Rules of Evidence. BANA, therefore, objects to the Drena Affidavit in its entirety because the document is an improper out of court statement made by a party declarant and offered in evidence to prove the truth of the matters asserted in the statement. Moreover, the Drena Affidavit includes multiple statements that are based on inadmissible hearsay, constitute inadmissible hearsay, are not based on the affiant's personal knowledge, constitute improper factual conclusions, and/or constitute improper legal conclusions. The Drena Affidavit also violates the best evidence rule because the affiant provides no documentary or other factual evidence to support his conclusory statements, and the affiant makes reference to documents which may or may not exist are which are certainly not provided as exhibits to the affidavit itself.

Finally, the Drena Affidavit is replete with statements referring to alleged conversations with unidentified BANA employees, as well as identified BANA employees such as Vera Lembrick, which are not substantiated or corroborated by BANA or any documentary evidence. Thus, each of the statements made in the Drena Affidavit constitutes inadmissible hearsay. Moreover, the Drena Affidavit as a whole does not fall under any of the exceptions to hearsay set forth in Rules 803 or 804 of the Federal Rules of Evidence, nor do the individual statements made in the Drena Affidavit.

For all of these reasons, the Drena Affidavit does not constitute competent summary judgment evidence and is inadmissible under the Federal Rules of Evidence. Accordingly, the Court should strike and/or disregard the Drena Affidavit in its entirety.

**IV.   ARGUMENT AND AUTHORITIES**

The Opposition fails to cite any legal authority for Plaintiff's assertions and further establishes Plaintiff's apparent attempt to shift his financial difficulties stemming from his divorce and substantial loss of income in 2009 (Compl. ¶ 10) to BANA. Notwithstanding BANA's objections to Plaintiff's summary judgment evidence, Plaintiff does not and cannot raise a genuine issue of material fact which precludes summary judgment in BANA's favor and against the Complaint, which fails as a matter of law and undisputed fact.

    **A.   Plaintiff's Escrow-Based Claims (Counts I and II) Fail As a Matter of Law and Undisputed Fact.**

        **1.   Because Plaintiff Does Not Dispute He Had Actual Knowledge of the Imposition of Escrow, There Is No Genuine Issue of Material Fact Precluding Summary Judgment in BANA's Favor on Plaintiff's Escrow-Based Claims (Counts I and II).**

Faced with the summary judgment evidence presented by BANA which shows BANA fully informed Plaintiff that the imposition of the escrow was a requirement under MHA guidelines in order for Plaintiff to be reviewed for loss mitigation assistance, *see* Doc. 39-2 ¶ 16,

Plaintiff concedes for the first time in the Opposition that he, in fact, **had actual knowledge** of the imposition of the escrow. *See generally* Opp., Drena Affidavit ¶ 2 ("In discussions I had with Bank of America representatives by telephone in connection with my loan being reviewed for loan modification options, they informed me that in order to even [be] reviewed I had to agree that escrow payments would be added to the regular monthly payments."); Drena Affidavit ¶ 4 ("When discussing the potential loan modification with Bank of America, I had agreed that escrow payments could be added…."). These admissions are fatal to Plaintiff's escrow-based claims for violation of CUTPA and the CCPA as alleged in Counts I and II.

In making this concession, Plaintiff attempts to recast his escrow-based claims by arguing in the Opposition that BANA did not provide him with *written* notice of the revocation of escrow. *See* Opp. at 4. But Plaintiff does not allege in the Complaint that BANA did not provide *"written" notice* of the revocation of escrow. *See* Compl. ¶¶ 12-14, 16. Rather, Plaintiff alleges BANA *unilaterally* began to debit $630 a month from his account *without his authorization or knowledge*, an allegation he now concedes was false. *See id.* Plaintiff's "new" theory of liability, i.e., that BANA did not have the unilateral right to revoke the waiver of escrow and could only do so upon providing written notice, is irrelevant to the allegations in the Complaint and does not establish the existence of a genuine issue of material fact precluding summary judgment in BANA's favor. When Plaintiff's concession that he had actual knowledge of the requirement for imposition of escrow is coupled with BANA's undisputed summary judgment evidence, which shows BANA provided oral and written notice to Plaintiff regarding the imposition of escrow, there can be no legitimate dispute that Plaintiff's escrow-based claims fail as a matter of law and undisputed fact. Accordingly, the Court should grant summary

judgment in favor of BANA and against Plaintiff's escrow-based claims as alleged in Counts I and II.

### 2. BANA Had No Duty to Remove the Escrow After Plaintiff Refused the January 2010 Trial Payment Plan.

Having conceded that he had full knowledge of the imposition of escrow as discussed above, Plaintiff also argues in the Opposition that BANA should have "removed" the escrow after Plaintiff declined the January 2010 TPP because the escrow imposition was "conditional" on the modification of his loan. Opp. at 4; Drena Affidavit ¶ 4 ("I had agreed that escrow payments could be added to the payments in f the loan were going to be modified."). But this new "argument" also is not supported by the allegations in the Complaint, as Plaintiff does not allege anywhere in the Complaint that he agreed to a conditional imposition of escrow or that BANA offered a conditional imposition of escrow. *See generally* Compl. Thus, Plaintiff's argument is irrelevant and does not raise a genuine issue of material fact precluding summary judgment against Plaintiff's escrow-based claims for violation of CUTPA and the CCPA.

Not only is Plaintiff's new theory of liability unsupported by the Complaint, it also is unsupported by evidence or case law, as Plaintiff offers no evidence to support his conclusory statement that the imposition of escrow was "conditional" or that BANA somehow had an obligation to "remove" the escrow after he refused the January 2010 TPP. Plaintiff also provides no evidence to show he ever contacted BANA to request that it waive the imposition of escrow after Plaintiff declined the January 2010 TPP or that he ever requested that BANA stop auto-debiting his checking account for the increased amount at any time. *See* Doc. 39-2 ¶¶ 21-22. To the contrary, BANA's undisputed summary judgment evidence shows Plaintiff indicated he understood the reason for the increase in his payment and stated he did not want to cancel the participation in HAMP review. *See id.* ¶ 21. That Plaintiff argues in the Opposition that "it was

not his intention to have escrows added to the payments unless the loan were to be modified" is irrelevant, as Plaintiff was fully aware—and does not dispute he was fully aware—that an escrow impound was a necessary requirement for any modification review to move forward. Furthermore, it is illogical for Plaintiff to argue BANA should have "removed" the escrow after he declined the January 2010 TPP because he continued to be reviewed for loss mitigation assistance and told BANA's representatives that he did not want to cancel the participation in HAMP review. *See id.* Plaintiff does not dispute this point and in fact concedes he reviewed loan modification options with BANA on March 5, 2010 and agreed to continue in loss mitigation review. *See* Drena Aff. ¶ 5. ("On March 5, 2010, I sat with Vera Lembreck … and reviewed loan modification options with her. Ms. Lembrick … told me that she was initiating a review of the loan for loan modification options.").

In sum, the undisputed summary judgment evidence before the Court shows Plaintiff knew escrow would need to be collected once the loan went into loss mitigation review, and Plaintiff did nothing to stop the collection of escrow once loss mitigation review had begun, his new argument regarding a "conditional" aspect to the imposition of escrow notwithstanding. Because there is no genuine issue of material fact precluding summary judgment in favor of BANA with regard to Plaintiff's escrow-based claims as alleged in the Complaint, the Court should grant summary judgment in favor of BANA and against Plaintiff's escrow-based claims as alleged in Counts I and II.

> **B. Plaintiff's Modification Review-Based Claims Fail as a Matter of Law and Undisputed Fact.**

As discussed in BANA's Motion, Plaintiff alleges as the basis for his claims for violation of CUTPA, violation of the CCPA, innocent misrepresentation, negligent misrepresentation, and negligent infliction of emotional distress that BANA delayed in approving Plaintiff for a

permanent modification. As an initial matter, Plaintiff's CUTPA claim fails a matter of law because Connecticut courts have specifically held that refusing to negotiate a loan modification "does not rise to the level of a violation of CUTPA." *T.D. Bank, N.A. v. M.J. Holdings, LLC*, No. CV106003386, 2011 WL 1030160, at *6 (Conn. Super. Ct. Feb. 17, 2011), *aff'd in part and rev'd in part*, 143 Conn. App. 322 (2013). Breaching an alleged promise to modify a loan also does not rise to the level of a CUTPA violation. *See id.* Thus, the mere failure to negotiate or approve a loan modification does not constitute a violation of the CUTPA.

As to Plaintiff's remaining loss mitigation review-based claims, each fails as a matter of law and undisputed fact because the undisputed summary judgment evidence shows BANA did not unreasonably delay in reviewing Plaintiff's loan for a modification, as Plaintiff alleges. BANA provided undisputed summary judgment evidence to show the extensive efforts it made beginning in 2010, which culminated in a 2014 permanent modification, in reviewing Plaintiff's various requests for loss mitigation assistance. As detailed in BANA's Motion, BANA sent Plaintiff numerous letters, approved Borrowers for four separate trial period plans between January 2010 and September 2013 which Borrowers did not accept, and offered to permanently modify the loan in April 2012. Yet, Borrowers rebuked BANA's offers at every turn and only agreed to a modification after BANA agreed to permanently forgive approximately $66,000 in principal. Thus, any delay in permanently modifying Plaintiff's loan was due to Borrower's dislike of the loss mitigation options offered to them and not due to any deceptive, abusive or misleading action in collecting Plaintiff's debt for purposes of his CCPA claim, or any misrepresentation on BANA's part for purposes of his innocent or negligent misrepresentation claims. *See generally* BANA's Motion. Plaintiff also offers no case law or other authority to show BANA's conduct in reviewing him for loss mitigation assistance was "egregious" or

otherwise constituted "socially intolerable behavior for purposes of his emotional distress claim. *See id.* Plaintiff's remaining loss mitigation review-based claims, therefore, fail as a matter of law and undisputed fact.

Faced with BANA's summary judgment evidence, which Plaintiff does not and cannot dispute, Plaintiff appears to suggest in the Opposition that BANA should account for each and every month between June 2010 and the 2014 permanent modification or face liability. *See generally* Opp. Specifically, Plaintiff argues BANA should have rendered a decision on the Loan modification between June 2010 until October and November 2010, attacks specific statements made in BANA's affidavit as "incorrect" or otherwise inaccurate, and conclusorily states he was eligible for a modification in November 2011 and should not have been denied. *See, e.g.*, Opp. at 5, 6. Yet, Plaintiff offers no evidence to show how or why BANA's statements are incorrect or inaccurate, and Plaintiff's unilateral "beliefs" regarding the loss mitigation review process or his alleged qualification for a loan modification do not constitute admissible summary judgment evidence or otherwise refute BANA's summary judgment evidence.

In sum, Plaintiff has failed to come forward with any summary judgment evidence, let alone admissible summary judgment evidence, to show the existence of a genuine issue of material fact regarding his modification review-based claims which precludes summary judgment in BANA's favor. Accordingly, the Court should grant summary judgment in favor of BANA and against Plaintiff's modification review-based claims as alleged in Counts I, II, III, IV, and VI.

## V.     CONCLUSION

For the reasons set forth herein and in BANA's Motion, there is no genuine issue as to any material fact relating to Plaintiff's Complaint precluding summary judgment in BANA's

favor.  Accordingly, the Court should grant summary judgment in favor of BANA and against each of Plaintiff's remaining claims.

Dated: March 21, 2017	Respectfully submitted,

	BANK OF AMERICA, N.A.


	_____/s/_____
	Pierre-Yves Kolakowski (ct13318)
	ZEICHNER ELLMAN & KRAUSE LLP
	35 Mason Street
	Greenwich, CT  06830
	Tel:  (203) 622-0900
	Fax:  (203) 862-9889
	pkolakowski@zeklaw.com
	Attorneys for Bank of America, N.A.


**CERTIFICATE OF SERVICE**

I hereby certify that on March 21, 2017, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

	_____/s/_____
	Pierre-Yves Kolakowski (ct13318)
	ZEICHNER ELLMAN & KRAUSE LLP
	35 Mason Street
	Greenwich, CT  06830
	Tel:  (203) 622-0900
	Fax:  (203) 862-9889
	pkolakowski@zeklaw.com
	Attorneys for Bank of America, N.A.